Ronald Joseph DeFEO, Jr., Petitioner,

v.

Christopher ARTUZ, et al., Respondents.

No. CV 95–2060.

United States District Court,
E.D. New York.

March 17, 1997.

Ronald Joseph DeFeo, Jr., Stormville, NY, Petitioner pro se.

James M. Catterson, Jr., Suffolk County District Attorney by Karen Petterson, Ass't District Attorney, Riverhead, NY, for Respondents.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

*Pro se* petitioner Ronald J. DeFeo, Jr. brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, his third such petition in this Court. Respondents oppose the petition.

### I. BACKGROUND

In November 1975, petitioner was found guilty of six counts of murder in the second degree following a six-week jury trial before

Justice Thomas Stark in New York State Supreme Court, Suffolk County. For purposes of this decision, the facts established at trial, as summarized by Justice Stark in a decision dated January 6, 1993 on petitioner's collateral attack of his conviction, are as follows:

> In November 1974, the defendant was living with his two parents, two sisters and two brothers at 112 Ocean Avenue in Amityville, New York. He was employed at his grandfather's automobile agency in Brooklyn, and commuted to work there daily. In the early morning hours of November 13, 1974, the defendant shot and killed his parents and four siblings as they lay in their beds, with a .35 caliber Marlin lever action rifle. After cleaning up and collecting incriminating evidence, including clothing, the expended cartridge cases and other items, he left the house and threw the rifle into the water at the foot of Ocean Avenue. Enroute [sic] to Brooklyn, he placed the incriminating items in a storm drain and then went to the automobile agency. He drove back to Amityville in the afternoon, entered the house and then told friends that everyone in the house was dead. During the ensuing police investigation, he initially told police that the killing had been done by a mob hit-man. Subsequently, on the afternoon of November 14, 1974, he gave an oral statement to the police admitting he had killed his family and telling them of the location of the rifle and the secreted evidence.

*See People v. DeFeo,* Indictment No. 1251/74, at 1–2 (N.Y. Sup.Ct., Suffolk County, Jan. 6, 1993) (the "January 6, 1993 Order"). Petitioner testified at trial and admitted that he killed his family, allegedly in self-defense, believing they planned to kill him, and that he acted alone. He was sentenced in December 1975 to six consecutive indeterminate terms of incarceration of twenty-five years to life.

On March 27, 1978, the Appellate Division, Second Department, unanimously affirmed the conviction, *see People v. DeFeo,* 61 A.D.2d 1141, 403 N.Y.S.2d 165 (2d Dep't 1978), and on May 23, 1978, the Court of Appeals denied leave to appeal, *see People v.*

*De Feo,* 44 N.Y.2d 952, 408 N.Y.S.2d 1032, 380 N.E.2d 342 (1978).

Meanwhile, in December 1975, prior to his sentence, petitioner brought his first petition for a writ of habeas corpus in this Court. By Memorandum and Order dated December 1, 1975, Judge Weinstein dismissed the petition for failure to exhaust state remedies. *See United States ex rel. DeFeo v. Warden, Suffolk County Jail,* No. 75C 2025 (E.D.N.Y. Dec. 1, 1975). Petitioner brought his second petition for a writ of habeas corpus in August 1982, raising two grounds: (1) denial of his Sixth Amendment right to counsel; and (2) denial of his Fifth Amendment right against self-incrimination based on an alleged failure of the police to read him his *Miranda* warnings. By Memorandum and Order dated May 16, 1984, familiarity with which is assumed, this Court denied the second petition on the merits. *See DeFeo v. LeFevre,* CV 82–2565 (E.D.N.Y. May 16, 1984). By order dated October 19, 1984, the Court of Appeals for the Second Circuit affirmed the denial of the second petition. *See Defeo v. LeFevre,* 751 F.2d 368 (2d Cir.1984).

In March 1990, petitioner moved before Justice Stark pursuant to § 440.10 of the New York State Criminal Procedure Law ("CPL") to vacate his conviction, principally claiming ineffective assistance of counsel because: (1) his attorney, William Weber ("Weber"), "prevented him" from presenting to the jury the true facts of what happened; (2) Weber "forced him" to present an insanity defense; (3) Weber told "many of his witnesses to falsely testify as to irrational acts" by petitioner to support the insanity defense; (4) Weber told one prospective witness, who refused to testify as directed by Weber, to "get lost"; and (5) Weber was "motivated by a plan to obtain financial rewards from book and movie rights." In deciding the motion, Justice Stark conducted an evidentiary hearing, at which petitioner testified. Justice Stark denied the motion in all respects in his January 6, 1993 Order, finding petitioner's testimony to be "false and fabricated." *See* January 6, 1993 Order, at 3. Justice Stark also found the following:

> (1) The defendant was not forced by William Weber to present an insanity de-

fense. He consented to the use of this defense and co-operated [sic] with his attorney in the preparation of the proof in support of the defense, identifying persons who could testify as to his conduct, and participating in lengthy psychiatric examinations in connection with the defense.

(2) William Weber did not tell Linnea and Roger Nonnewitz to testify falsely, nor did he forbid them from testifying as to their knowledge of the defendant and his family. Linnea Nonnewitz was employed as a cleaning woman for the DeFeo family for five years prior to the deaths, and testified on trial as to the normal family relationships she observed during that period.

(3) William Weber did not tell John Carswell and Charles Tewksbury to testify falsely and forbid them from giving truthful testimony, nor did William Weber tell Barry Springer to avoid the trial.

(4) During the trial, William Weber had no intent or plan to obtain book and movie rights for himself concerning the DeFeo murders. After defendant's conviction, he became involved with others in an unsuccessful venture to publish a book, and the project never came to fruition.

*Id.* at 5.

A number of interim orders were incorporated by Justice Stark in the January 6, 1993 Order, including orders dated November 21, 1991, *see People v. DeFeo,* Indictment No. 1251/74 (N.Y. Sup.Ct., Suffolk County, Nov. 21, 1991) (the "November 21, 1991 Order"), and November 24, 1992, *see People v. DeFeo,* Indictment No. 1251/74 (N.Y. Sup.Ct., Suffolk County, Nov. 24, 1992) (the "November 24, 1992 Order"). The November 21, 1991 Order denied petitioner's request to hire a forensic expert for DNA testing and comparison of blood on clothing petitioner was wearing at the time of his arrest (specifically, a dungaree jacket) and blood on clothing found in a storm drain in Brooklyn, New York, after petitioner's arrest (specifically, dungaree trousers, which petitioner admitted were his during post-arrest processing) with his blood and one of his victim's blood. Petitioner argued that the test would show that the blood on the jacket and trousers was his

blood and not one of his victim's blood, that the police switched petitioner's bloodstained clothing with clothing found in the Brooklyn storm drain, and that petitioner was the victim of police brutality. In rejecting the motion, Justice Stark concluded:

> [Defendant] has failed to demonstrate the necessity of such examination. He has also failed to demonstrate the relevancy of any evidence he hopes to produce after the examination of the clothing. The clothing has been held for over seventeen (17) years and is not suitable for DNA testing. Defendant would seek to compare his blood with that of his deceased sister's blood. He fails to show how a sample of her blood or the blood of other members of his family may now be procured.

November 21, 1991 Order, at 3. The November 24, 1992 Order denied petitioner's further request for DNA testing of the blood on that same clothing purportedly to show that the police "switched" the clothing found in the storm drain with clothing he was wearing when arrested. Justice Stark concluded:

> Defendant's claim that the police somehow "switched" the bluejeans found in the storm drain and the dungaree jacket worn by him on November 14, 1974 [the day he was arrested], is rebutted by the record, both garments being put into evidence at the trial.

> Should DNA testing of both garments determine that they were stained by defendant's blood, this would have no bearing on defendant's claims in this proceeding.

> If defendant contends that he was wearing both garments at the time of his interrogation, and that the blood stains were the result of physical force by the police, he failed to raise this claim during his pretrial suppression hearing, even though both garments were in evidence.... In any event, at the end of the pre-trial suppression hearing I found, as a matter of fact, that no police officer used or threatened the use of physical force upon the defendant at any time during his interrogation. The Appellate Division did not

disturb such finding, and this issue may not be raised in this proceeding.

November 24, 1992 Order, at 2–3.

Associate Justice Vincent Pizzuto of the Appellate Division, Second Department, denied petitioner's motion for leave to appeal the January 6, 1993 Order by order dated June 28, 1993, and denied petitioner's motion for reargument by order dated September 24, 1993.

Petitioner then brought the current petition, raising the following grounds: (1) ineffective assistance of trial counsel because (a) Weber "forced him to go along" with an insanity defense, (b) Weber "prevented certain persons from testifying" on his behalf, and (c) Weber "perjured himself at the evidentiary hearing" on the § 440.10 motion by denying he had an "outside interest in the outcome of trial"; (2) improper denial of his § 440.10 motion requesting DNA testing because (a) the blood stains on the clothing he was wearing when arrested was his and not one of his victims and resulted from police brutality at the time of his arrest, (b) the state court failed to address whether the clothing from one of the victims would have shown that more than one person committed the crime, and (c) the state court refused to hear testimony of a witness who "would have substantiated" his claim of police brutality at the time of arrest and the alleged "switch" of clothing he was wearing with the clothing recovered from the Brooklyn storm drain; (3) prosecutorial misconduct because (a) the prosecutor "offered false evidence" at trial concerning "certain clothing that had what appeared to be blood on them," (b) the prosecutor "knowingly and willfully allowed prosecution witnesses to give false and fabricated testimony" at the hearing on the § 440.10 motion, and (c) the prosecutor "intentionally attempted to mislead the court" into believing the items of clothing were "lost/destroyed" at the hearing on the § 440.10 motion; and (4) "excessive sentence/cruel and unusual punishment" because the sentences were "ordered to be served consecutively to each other, rather than concurrently."

## II. *DISCUSSION*

Respondent argues that this Court should dismiss claims 1, 3(a), and 4 for abuse of the writ. A federal court may dismiss a petition for a writ of habeas corpus if it is a "second or successive petition ... that ... fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted abuse of the writ." Rule 9(b) of the Rules Governing § 2254 Cases; *see also* 28 U.S.C. § 2244(b). The standard for determining what constitutes abuse of the writ was clarified in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey*, the Supreme Court adopted the *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), "cause" and "prejudice" standard as the standard for determining whether there has been an abuse of the writ through inexcusable neglect. *See McCleskey*, 499 U.S. at 490–96, 111 S.Ct. at 1468–71; *see also Russo v. Mann*, 785 F.Supp. 34, 37 (E.D.N.Y.1992). Where a petitioner files a second or subsequent petition, "the government bears the burden of pleading abuse of the writ" and does so, "if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *Id.* at 494, 111 S.Ct. at 1470. Once that is accomplished, the burden shifts to the petitioner to disprove abuse. *Id.* To disprove abuse of the writ, the petitioner must show "cause for failing to raise [the new claim] and prejudice therefrom." *Id.* " '[C]ause ... requires a showing of some external impediment preventing counsel from constructing or raising the claim.' " *Id.* at 497, 111 S.Ct. at 1472 (quoting *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)). The abuse-of-writ doctrine "examines petitioner's conduct: the question is whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process." *Id.* at 498, 111 S.Ct. at 1472. "The requirement of cause in the abuse-of-writ context is based on the principle that

petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *Id.* If the petitioner cannot show cause, petitioner's failure to raise the claim earlier might still be excused if the petitioner can show that a "fundamental miscarriage of justice" would result from a failure to entertain the claim. *Id.* at 494–95, 111 S.Ct. at 1470–71; *see also Kuhlmann v. Wilson,* 477 U.S. 436, 451–54, 106 S.Ct. 2616, 2625–27, 91 L.Ed.2d 364 (1986) (concluding that " 'ends of justice' require federal courts to entertain [successive] petitions only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence").

 Respondent has met its burden as to claims 1, 3(a), and 4. It appears clear from the record that petitioner possessed, or could have obtained, a sufficient basis to allege in the second petition his present claim 1 for ineffective assistance of counsel, claim 3(a) for prosecutorial misconduct, and claim 4 for excessive sentence. Petitioner fails to show any "external impediment" that prevented him from raising these claims earlier or that he did not have ample time or opportunity to conduct a reasonable investigation prior to his second petition in 1982. When he filed the second petition in 1982, petitioner certainly knew what his sentence was, yet he did not argue that his sentence was unconstitutionally excessive, as he attempts now in claim 4. He also possessed, or reasonably could have obtained, a sufficient basis to argue that his attorney "forced him to go along" with an insanity defense (claim 1(a)), "prevented certain persons from testifying" on his behalf (claim 1(b)), or had an "outside interest in the outcome of the trial" (the underlying basis for claim 1(c)). Similarly, he could or should have raised or developed prior to the second petition his allegation of the prosecutor's misconduct at trial asserted in claim 3(a). Because ·petitioner fails to demonstrate "cause" for not raising these claims earlier, this Court need not consider whether there has been actual prejudice to petitioner. *See McCleskey,* 499 U.S. at 502, 111 S.Ct. at 1474–75; *Russo,* 785 F.Supp. at 37–38. Moreover, there is nothing in the record to suggest petitioner's innocence and

absolutely no indication that a "fundamental miscarriage of justice" would result from a failure to entertain the claims. *See McCleskey,* 499 U.S. at 495, 111 S.Ct. at 1470; *Kuhlmann,* 477 U.S. at 451–54, 106 S.Ct. at 2625–27.

 Even if petitioner could show "cause," petitioner cannot show "prejudice," as there is no merit to these claims. Indeed, claims 1(a), 1(b), and 1(c) were expressly rejected by Justice Stark in his findings after an evidentiary hearing on petitioner's § 440.10 motion, *see* January 6, 1993 Order, at 5–6, and petitioner shows no basis for this Court to question those findings, *see* 28 U.S.C. § 2254(d). There is no merit to claim 4, as his sentence is within the range prescribed by state law and is not unconstitutional. *See Bellavia v. Fogg,* 613 F.2d 369, 372–74 (2d Cir.1979); *Briecke v. New York,* 936 F.Supp. 78, 85 (E.D.N.Y.1996); *see also Underwood v. Kelly,* 692 F.Supp. 146, 152 (E.D.N.Y.1988) ("When a sentence is within [the range prescribed by law], a claim of excessive punishment does not present a constitutional question necessary for habeas corpus reversal."), *aff'd,* 875 F.2d 857 (2d Cir. 1989), *cert. denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989). As for claim 3(a), petitioner offers no evidence to substantiate his claim of prosecutorial misconduct at trial. Significantly, Justice Stark found that petitioner's claim that the police somehow "switched" the clothing was "rebutted by the record, both garments being put into evidence at the trial," November 24, 1992 Order, at 2–3, and there is no indication that petitioner did not have an adequate opportunity to address the source of the clothing at trial. Moreover, Justice Stark rejected the suitability of DNA testing on the clothing or of the victims, *see* November 21, 1991 Order, at 3, and petitioner fails to show any basis for this Court to question those findings, *see* 28 U.S.C. § 2254(d).

 As for claims 2(a), 2(b), and 2(c), respondent does not argue abuse of the writ, but argues that claims 2(a) and 2(c) are barred under the doctrine of procedural default and that claims 2(a), 2(b), and 2(c) are, in any event, without merit. This Court

agrees. The trial court conducted an evidentiary hearing to explore these allegations as raised in petitioner's § 440.10 motion. Petitioner's request for DNA testing, purportedly to show police brutality (claims 2(a) and 2(c)), and, therefore, to prove his confession was coerced or to prove ineffective assistance of counsel or prosecutorial misconduct, was rejected by Justice Stark based on petitioner's failure to raise a claim of police brutality at the pretrial suppression hearing and on direct appeal, *see* CPL § 440.10(2)(c). *See* November 24, 1992 Order, at 3. Because petitioner fails to show "cause" and "prejudice" or that failure to consider his allegations of police brutality would result in a "fundamental miscarriage of justice," these claims are procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Meachem v. Keane*, 899 F.Supp. 1130, 1138–39 (S.D.N.Y.1995). In any event, petitioner testified at the hearing and Justice Stark rejected the request, noting his previous finding "that no police officer used or threatened the use of physical force upon [petitioner] at any time during his interrogation." November 24, 1992 Order, at 3. Justice Stark also found that petitioner's claim that the police somehow "switched" the clothing was "rebutted by the record, both garments being put into evidence at the trial." *Id.* at 2–3. Moreover, although not urged by respondent, it is clearly an abuse of the writ for petitioner to raise his allegation of police brutality approximately 13 years after his second petition, in which he challenged circumstances of his interrogation (namely, his waiver of the privilege against self-incrimination), and approximately 20 years since the incident and trial. As for petitioner's claim that clothing from one of the victims would have shown that more than one person committed the crime and that the state court failed to address this claim in the § 440.10 motion (claim 2(b)), this claim also is without merit, having been rejected by the state court. As Justice Stark found:

> [Defendant] has failed to demonstrate the necessity of such examination. He has also failed to demonstrate the relevancy of any evidence he hopes to produce after the examination of the clothing. The clothing has been held for over seventeen (17) years and is not suitable for DNA testing. Defendant would seek to compare his blood with that of his deceased sister's blood. He fails to show how a sample of her blood or the blood of other members of his family may now be procured.

November 21, 1991 Order, at 3. Petitioner fails to show any basis for this Court to question those findings. *See* 28 U.S.C. § 2254(d). Moreover, those factual findings demonstrate that it is clearly an abuse of the writ for petitioner to raise such a claim approximately 13 years after his second petition and approximately 20 years since the incident and trial.

As for claims 3(b) and 3(c), alleging prosecutorial misconduct at the hearing on the § 440.10 motion, petitioner offers no basis to substantiate his claims that the prosecutor "knowingly and willfully allowed prosecution witnesses to give false and fabricated testimony" (claim 3(b)) and that the prosecutor "intentionally attempted to mislead the court" into believing the items of clothing were "lost/destroyed" (claim 3(c)). Accordingly, these claims are denied.

### III. CONCLUSION

For the reasons above, various claims are dismissed and, in any event, are denied, and the remaining claims are denied. The Clerk of the Court is directed to close the file in this matter.

SO ORDERED.