■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAX ALMONOR, Appellant. [674 NYS2d 66] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Feldman, J.), rendered December 21, 1995, convicting him of manslaughter in the first degree and assault in the first degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant contends that the court deprived him of the

right to present a defense by precluding him from presenting the testimony of three witnesses in support of his insanity defense. We conclude that, since the defendant did not provide the People with sufficient notice pursuant to CPL 250.10 of his intention to present these witnesses and did not establish good cause for his failure to do so, the court did not improvidently exercise its discretion in precluding the testimony of the proposed witnesses.

The defendant shot his estranged wife to death in a waiting room in the Brooklyn Family Court in March 1993. He timely notified the People, pursuant to CPL 250.10, that he intended to present an insanity defense and that he would rely on the testimony of Dr. Stanley Brodsky. However, about three weeks into the trial, and after Dr. Brodsky's direct examination, the defendant for the first time advised the court and the prosecutor that he intended to call three additional witnesses in support of his insanity defense.

The additional proposed witnesses were a psychologist who performed intelligence and personality tests on the defendant in March 1993, and the psychiatrist and psychologist who, as a team, examined the defendant in September 1993 pursuant to CPL 730.30 and determined that he was unfit to stand trial. The defense counsel advised the court that the psychologist who administered tests to the defendant would not be questioned about his mental state at the time of the crime but would interpret the test results. Similarly, the doctors who conducted the CPL 730.30 examination would be questioned about the defendant's mental state shortly after the crime, rather than his mental state at its commission.

After reviewing the reports relied upon by the defendant, the court precluded him from calling the proposed witnesses. The court noted that the CPL 730.30 examination reports, which addressed the issue of the defendant's competency to stand trial, were based on the defendant's condition in September 1993, which had "deteriorated significantly" over the preceding five-month period. Those reports did not address his mental state at the time of the shooting, and described symptoms that differed from those that the defendant claimed existed at the earlier time. The court concluded that the People needed a realistic opportunity to prepare to meet this psychiatric evidence, and the defendant had not shown good cause for his failure to timely notify the People of his intention to present such evidence. Concerning the proposed testimony of the psychologist who administered the intelligence tests, the court similarly concluded that the defendant failed to establish good cause for

the untimely notice. The People had had no prior indication that the defendant intended to rely on that evidence, and had not had an opportunity to ask their expert witness to evaluate the test results. The court further noted that the psychologist's report did not address the issue of the defendant's mental state at the time of the crime. We agree.

The primary aim of the notice provision of CPL 250.10 is to give the prosecution sufficient opportunity to obtain evidence necessary to refute the defense of mental infirmity (*see, People v Berk,* 88 NY2d 257, 264, *cert denied* 519 US 859). The trial court correctly determined that the statutory purpose would have been thwarted here if the defendant were permitted to present the proposed additional expert witnesses. The prejudice to the People was apparent, and the defendant offered no excuse for the belated notice to the People and the court.

The defendant contends, however, that this evidence was crucial to his insanity defense and that any prejudice to the People could have been cured by a short adjournment. Initially, we note that there is no indication in the record as to whether the defense counsel had ever contacted the proposed witnesses, when they might have been available to testify, or the time that the People would have needed to prepare to rebut the proposed evidence.

We also disagree with the defendant's contention that the excluded testimony was crucial to his insanity defense. The defendant's expert, Dr. Brodsky, reviewed the reports prepared by the excluded witnesses and which contained their observations of his behavior. Based in part on the information in those reports, Dr. Brodsky testified that the defendant suffered from a delusional paranoid disorder at the time of the crime and that, as a result of that disorder, he lacked substantial capacity to understand that his actions were wrong. Moreover, the defense counsel stated that he did not intend to question the doctors who prepared the CPL 730.30 reports as to the defendant's state of mind at the time of the crime, and the report of the other doctor also did not address that issue. Any claim that the excluded evidence was crucial to the defense of extreme emotional disturbance is academic, as the jury found that the defendant acted under extreme emotional disturbance, thus reducing his conviction from murder in the second degree to manslaughter in the first degree.

The defendant's sentence was not excessive (*see, People v Suitte,* 90 AD2d 80). O'Brien, J. P., Pizzuto, Joy and Florio, JJ., concur.