Max ALMONOR, Petitioner–Appellant,

v.

John KEANE, Superintendent, Wood-
bourne Correctional Facility, Re-
spondent–Appellee.

No. 01–2100.

United States Court of Appeals,
Second Circuit.

Sept. 21, 2001.

Lynn W.L. Fahey, Appellate Advocates, New York, NY, for petitioner-appellant.

Leonard Joblove & Monique Ferrell, Assistant District Attorneys, Kings County, Brooklyn, NY, for respondent-appellee.

Present NEWMAN, CALABRESI and SACK, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Petitioner–Appellant Max Almonor ("Almonor") appeals from a judgment of the United States District Court for the Eastern District of New York (Nicholas A. Garaufis, *Judge* ), denying his petition for a writ of habeas corpus.

Almonor, who has a history of psychiatric problems, shot and killed his estranged wife and injured another woman with his service revolver outside a courtroom in Brooklyn Family Court on March 12, 1993 while they awaited a scheduled

court appearance. Within one week of his arrest, Almonor was examined by Dr. Nahama Broner, who concluded that Almonor suffered from a "Delusional Disorder, persecutory type" and a "Narcissistic personality disorder (pre-morbid)." Six months later, Almonor was examined by Drs. Richard Berkelhammer and Howard Epstein, both of whom concluded that Almonor was "far too depressed and psychotic" to participate in his own defense and required hospitalization; the doctors also noted that Almonor's condition appeared to have deteriorated remarkably since the time of the shooting. Almonor was found competent to stand trial two years later.

The sole issue at trial was whether Almonor was insane or, alternatively, suffered from an extreme emotional disturbance sufficient to lessen his responsibility, at the time of the shooting. At trial, the defense was presumed to have served timely written notice, pursuant to sections 250.10(1) and (2) of New York Criminal Procedural Law, of Almonor's intention to rely upon psychiatric evidence in furtherance of the statutory defense of not guilty by reason of mental disease or defect. During jury selection, the defense counsel stated that it would call Dr. Stanley H. Brodsky, a clinical and forensic psychiatrist, as its psychiatric expert. Dr. Brodsky was expected to testify that, at the time of the shooting, Almonor lacked substantial capacity to know and appreciate the nature or consequences of his behavior or that such behavior was wrong. When the trial court asked whether "any other Doctor" would testify, the defense counsel did not respond and gave no other indication that he intended to introduce additional psychiatric testimony.

After the close of the prosecution's case and following his direct examination of Dr. Brodsky, the defense counsel informed the court that he intended to call Drs. Broner, Berkelhammer and Epstein as additional expert witnesses. The defense counsel assured the court that the witnesses would only testify about their observations of Almonor after the shooting and would not opine as to his mental state at the time of the shooting. The prosecution vigorously opposed the introduction of additional expert testimony on the grounds (1) that the defense had not given notice that the additional witnesses would be providing psychiatric evidence, and (2) that testimony about Almonor's general psychiatric condition at two points following the shooting would be irrelevant to the issues before the jury.

The trial court, while acknowledging the relevance of testimony from Dr. Broner regarding Almonor's mental condition "right after the event," nevertheless precluded the testimony of the additional witnesses. It found that the defense had not met the statutory notice requirement and had neglected to provide good cause for its failure to do so. In addition, the court noted that, were it to find otherwise, the prosecutor's ability adequately to prepare its cross-examination of the additional witnesses would be unfairly prejudiced. The trial court record also reflects the court's concern with the potential for jury attrition (and a mistrial) that could result during the approaching Thanksgiving holiday if there were additional delays in the trial.

On cross-examination, once confronted with contradictory statements made by Almonor and by witnesses to the shooting, Dr. Brodsky retreated from his earlier position that Almonor was insane at the time of the shooting. The defense counsel then sought, on redirect, to rehabilitate Dr. Brodsky's prior testimony by introducing reports that had been prepared by Drs. Broner, Berkelhammer and Epstein subsequent to their examinations of Almonor. Once again, the court barred the de-

fense from introducing the reports because Dr. Brodsky had not discussed them (although he had relied on them) in his diagnosis.

At the conclusion of the trial, the jury rejected the insanity defense and found that Almonor had intentionally caused the death of his wife while under the influence of extreme emotional disturbance. He was convicted of manslaughter in the first degree and assault in the first degree (the latter for his shooting of the bystander). Almonor was sentenced to consecutive terms of imprisonment of eight and one-third to twenty-five years on the manslaughter count and five to fifteen years on the assault count. The Appellate Division affirmed Almonor's conviction, *see People v. Almonor*, 251 A.D.2d 339, 674 N.Y.S.2d 66 (App. Div., 2d Dep't 1998), and the New York Court of Appeals ultimately determined that the trial court had not abused its discretion in making the evidentiary rulings. *See People v. Almonor*, 93 N.Y.2d 571, 693 N.Y.S.2d 861, 715 N.E.2d 1054, 1061 (N.Y.1999).

■ Almonor filed a petition for a writ of habeas corpus, claiming that the exclusion of the expert testimony of Drs. Broner, Berkelhammer and Epstein violated his federal constitutional rights to call witnesses and to present a defense. The district court denied the petition. We review *de novo* the district court's denial of habeas corpus relief. *See Sellan v. Kuhlman*, 261 F.3d 303, 307 (2d Cir.2001).

■ The parties devote a considerable portion of their briefs to a discussion of which standard of habeas review applies, given that the Appellate Division mentioned the federal constitutional rights asserted by Almonor, whereas the New York Court of Appeals, in its affirmance, did not expressly do so. The prosecution insists that the more deferential standard embodied in 28 U.S.C. § 2254(d), enacted in 1996 as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), applies; Petitioner contends that his federal constitutional claim was not "adjudicated on the merits" for purposes of 28 U.S.C. § 2254(d) and urges us to apply the pre-AEDPA *de novo* review. The underlying issue has been the focus of recent attention and a strongly stated holding of this court. *See Sellan*, 261 F.3d 303; *Washington v. Schriver*, 255 F.3d 45 (2d Cir.2001) It is not, however, relevant in this case because, under the standards set forth by the U.S. Supreme Court in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the decision of the state trial court to bar the additional psychiatric testimony did not, in the circumstances of the instant case, violate Almonor's federal constitutional rights. This is so because the trial court had good reasons for applying the state statutory rule and because the precluded testimony and reports, since they would not directly address Almonor's mental state at the time of the shooting, were not central to the questions before the jury.

Accordingly, we need not decide a question that was not explicitly considered by our court in *Sellan*, namely, whether, when analyzing a habeas claim under the AEDPA standard of review, a federal court must first consider whether the state court's decision was erroneous, prior to considering whether such decision, even if erroneous, involved an application of federal law that was unreasonable. This is a question that has divided the other circuits. *Compare Van Tran v. Lindsey*, 212 F.3d 1143, 1155 (9th Cir.2000) (holding that federal courts are required to determine whether a state court's decision was erroneous before considering whether it was contrary to or involved an unreasonable application of controlling law under AEDPA), *cert. denied*, 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000), *with*

*Bell v. Jarvis*, 236 F.3d 149, 161 (4th Cir. 2000) (en banc) (stating that there are no "persuasive reasons or purposes, not expressed in the statute, which would support ... imposing upon [circuit courts] and ... district courts a 'methodology' of review in § 2254(d) cases that requires a determination of whether the state court has 'erred' before a determination of whether the state court is unreasonable in light of clearly established Supreme Court precedents"), *petition for cert. filed* (U.S. Mar. 29, 2001) (No. 00–9290).

Because, under *Taylor*, the decision of the state trial court did not violate any of Almonor's federal constitutional rights, we AFFIRM the decision of the district court.