OPINION OF THE COURT
Wachtler, J.
The defendant, convicted of perjury, appeals from an order of the Appellate Division affirming his conviction. His primary contention is that his constitutional rights were violated when the trial court excluded testimony of the defendant’s experts, concerning an alleged mental defect impairing his memory, after the defendant refused to submit to examination by the People’s expert.
The defendant’s perjury conviction stems from the Special Prosecutor’s 1975 investigation into fraudulent practices employed by some nursing home operators and suppliers seeking Medicaid reimbursement, as previously discussed in People v Pomerantz (46 NY2d 240, 244). At that time, the defendant was vice-president of a Brooklyn wholesaler who supplied groceries to nursing homes. Like Pomerantz, the defendant met with Ira Feinberg, a nursing home operator who, unknown to defendant, was working as an undercover agent for the Special Prosecutor in exchange for consideration on a recent Federal conviction. During that meeting, held at Feinberg’s office in August, 1975, the defendant in essence admitted that he gave kickbacks to some nursing home operators, described how the schemes worked and offered Feinberg a kickback deal. The conversation was secretly recorded by the Special Prosecutor’s investigators.
In July, 1976 the defendant was ordered to appear before a Grand Jury investigating corruption in the nursing home industry. In response to questions concerning kickback schemes and his involvement in them the defendant testi *63 fied that he did not recall them; had never discussed such schemes with a nursing home operator and had never offered a kickback to any operator, including Ira Feinberg. Subsequently the Grand Jury indicted the defendant for three counts of perjury in the first degree.
At trial, before a jury, the defendant called two experts, a psychologist and a psychiatrist, to testify that he was suffering from an organic brain defect which impaired his memory and, in the opinion of the psychiatrist, made him incapable of recalling the details of his 1975 meeting with Feinberg when he testified before the Grand Jury in 1976. Before they testified the prosecutor had requested an offer of proof and after being advised of the nature of the proposed testimony, objected to its admissibility and also urged “in the alternative that the People should have a right to examine Mr. Segal with a psychiatrist if that be the defense.” The court, however, allowed the testimony after defense counsel noted that he had not made similar demands with respect to prosecution witnesses and urged that he “should be allowed to proceed with my proof and he [the prosecutor] can object at any time he thinks it is inappropriate.”
After the defendant’s experts had testified the prosecutor renewed his request that the defendant be examined by the People’s psychiatrist. The defendant refused to consent to the exam and urged that the court could not direct him to participate because there was “no authority” for such an order and it would infringe on his Fifth Amendment privilege against self incrimination. The court granted the prosecutor’s application noting that the People’s “psychiatrist will not be permitted to give any testimony whatsoever as to any admissions made by the defendant during said examination.”
When the defendant still refused to submit to the exam in reliance on his Fifth Amendment right the prosecutor moved to strike the testimony of the defendant’s experts. The defendant objected on the ground that to do so at this stage could only prejudice his case with the jury. He also urged that the court should not strike the testimony of his psychologist because it was based on “objective tests” unrelated to the prosecution and in fact performed before his *64 Grand Jury appearance and indictment. The court found, however, that it would not be fair to permit the defendant to introduce expert testimony concerning his memory while he refused to allow the People an opportunity to conduct a psychiatric exam to test the validity of his experts’ opinions. Accordingly, the testimony of the defendant’s experts was stricken, the jury was instructed to disregard it and was further instructed that they were not to speculate about the reasons for this ruling nor should they draw any unfavorable inferences against the defendant as a result of this ruling.
The defendant was found guilty as charged. The Appellate Division affirmed, without opinion. One Justice dissented, with respect to the trial court’s order striking the expert testimony, and granted the defendant leave to appeal to this court.
The trial court’s ruling was expressly based on our decision in Matter of Lee v County Ct. of Erie County (27 NY2d 432). In that case we held that a defendant who raises the defense of insanity waives his Fifth Amendment privilege against self incrimination with respect to his mental capacity and, if he refuses to submit to a mental examination requested by the prosecutor, the court may preclude the defendant from introducing expert testimony on his own behalf. The defendant has not suggested that this procedure is constitutionally flawed (cf. Estelle v Smith, 451 US 454). He urges, however, that it applies only to statutory, as opposed to “non statutory” defenses. In the alternative he argues that the court’s order was too broad and that the People waived their right by requesting an examination at the “eleventh hour”.
The defendant notes that in Lee we dealt with a common-law defense which had been expressly recognized by statute (former Penal Law, § 1120, now Penal Law, § 30.05), that the statute requires the defendant to give the prosecutor pretrial notice of the defense (former Code Grim Pro, § 336, now GPL 250.10) and authorizes the court to order a psychiatric examination of the defendant if requested by the prosecutor (former Code Grim Pro, § 658, now GPL 250.10). He also notes that these statutes are not *65 applicable to a defense of impaired memory, that there is no comparable statutory procedures for such a defense and concludes that there is therefore no basis for the prosecutor to request or the court to order the defendant to submit to an examination by the People’s expert when that defense is raised. The defendant can raise the issue and, if he chooses, ask the jury to decide it by hearing only from his psychiatric experts.
The defendant takes too narrow a view of the Lee holding to the extent that he suggests it simply involved a matter of statutory construction or authority. In Lee it was noted that the prosecutor’s right to examine the defendant although recognized by statute was also, and more broadly, based on principles of fairness and the integrity of the trial process. We observed that once a defendant raised the issue of his mental competence the People had the burden of proving his sanity and rejected the notion that “a defendant who proffers an insanity defense may hide behind the defense because of his privilege and thereby make the People’s burden of proving sanity insurmountable” (Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 440, supra). The rule adopted — that the defendant’s expert testimony would be “inadmissible” unless he “fully co-operated and submitted to a mental examination, where one has been sought by the People” (Matter of Lee v County Ct. of Erie County, supra, p 442) — was not provided for in any of the statutes relating to the insanity defense. However, it was in accord with the rule in several other jurisdictions where it was considered a necessary exercise of the court’s inherent power to insure fairness and to preserve the integrity of the fact-finding process even when, as in the Federal courts, the defense was not statutory and there was an absence of legislative authority for a court-ordered examination of the defendant (see, e.g., United States v Albright, 388 F2d 719; United States v Baird, 414 F2d 700; see, also, Federal Rules of Criminal Procedure, rule 12.2, eff Dec. 1975.)[1]
*66 Nevertheless the defendant urges that there is no need to afford the prosecutor an opportunity to examine him when he submits expert evidence on a nonstatutory defense, such as impaired memory, because “the prosecution had no burden whatsoever with respect to the evidence presented by” the defendant. He notes that evidence of impaired memory would not constitute a “complete” defense, as would proof of insanity; “it was merely evidence adduced on the question of appellant’s lack of intent to swear falsely.” He also urges that in view of the fact that impaired memory is not specifically designated as a defense by statute and the defendant had no obligation to give the prosecutor pretrial notice of the defense, the prosecutor had no burden to disprove it. Thus he contends that “there is no basis for any prosecution expert to conduct an examination of appellant in the absence of any prosecution burden of proof”.
The defendant’s argument overlooks a basic point. At a criminal trial the People bear the burden of proof, not only with respect to ordinary defenses which have been codified (Penal Law, § 25.00, subd 1) but more fundamentally they must prove every element of the crime, including intent whenever relevant (CPL 70.20).[2] Although proof of a mental defect other than insanity may not have acquired the status of a statutory defense, and will not constitute a “complete” defense in the sense that it would relieve the defendant of responsibility for all his acts (see, e.g., Penal Law, § 30.05) it may in a particular case negate a specific intent necessary to establish guilt (see, e.g., People v Moran, 249 NY 179; People v Colavecchio, 11 AD2d 161).
In this case the People were bound to prove that the defendant gave false testimony during his Grand Jury appearance (Penal Law, § 210.15) and that he did so intentionally (Penal Law, § 210.00, subd 5). The evidence of the alleged memory defect was admittedly offered by *67 the defendant to show that this intent was lacking. It was understood by the parties, and the court charged the jury, that in order for the People to establish intent they were bound to prove beyond a reasonable doubt that the Grand Jury statements were not the product of a faulty memory or an inability to recall. So viewed, the case is essentially indistinguishable from Lee. The defendant sought, on the one hand, to put the People to their proof with respect to his mental capacity and, on the other hand, denied them an opportunity to effectively meet the burden. Thus the trial court properly held that the defendant could not submit expert testimony in support of his defense unless he afforded the People an opportunity to examine him so that they may submit evidence of similar quality.
When the defendant refused to consent to the People’s request to conduct a psychiatric examination the court could properly strike the testimony of the defendant’s experts. The court’s order was not unnecessarily broad although it included the testimony of the defendant’s psychologist. On the record it was reasonable for the court to conclude that the worth and accuracy of his conclusions could only be adequately tested in conjunction with a psychiatric interview of the defendant and that it would therefore be unfair to permit this evidence to stand as long as the defendant denied the People the opportunity to conduct such an examination. Similarly the fact that the psychologist’s examination of the defendant preceded his Grand Jury appearance is irrelevant in terms of affording the People an opportunity to meet the defendant’s proof with fully effective expert testimony of their own (cf. United States v Weiser, 428 F2d 932).
Finally, there is no merit to the defendant’s complaint that the court should not permit the prosecution “to sit back and watch, without objection, as the defendant develops his proof and then, at the eleventh hour, make an application for its own examination as a condition to the admissibility of defendant’s medical evidence.” The record shows that the prosecutor made his intention known as soon as the defendant’s experts were called to testify and the decision to delay ruling on this and the other points urged by the prosecutor was made at the specific request of defense counsel who *68 chose to first get his proof on the record. In short the People did not waive their right and any prejudice to the defendant’s case was a risk deliberately and obviously assumed by defense counsel at trial. We have considered the other arguments raised by the defendant and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order affirmed.

. Although the Code of Criminal Procedure authorized the court to order a psychiatric exam of the defendant when requested by the People in connection with an insanity defense, the CPL effective 1971 made no provision for such an exam and this apparently unintended omission was not corrected until a *66 1980 amendment to CPL 250.10. In the interim, however, courts continued to order such exams pursuant to Lee despite the absence of statutory support (see, e.g., People v Sullivan, 39 NY2d 903, 905; People v Traver, 70 Misc 2d 162).

. The People of course have no burden to disprove “affirmative defenses” (Penal Law, § 25.00, subd 2).