OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In the two cases before us, defendants appeal from separate orders affirming two unrelated judgments of conviction. Both turn on the introduction of psychiatric evidence in the defense of a criminal case. We hold that the trial court in each case acted within its discretion in precluding the defendant from introducing a portion of his psychiatric evidence. Accordingly, we affirm the orders of the Appellate Division in both cases.
 

 Background
 

 People v Anthony Pitts.
 
 In 1996, Anthony Pitts was attending Howard University, where he played football. Evidence presented at the trial revealed that defendant’s hopes for a professional football career ended when he sustained a serious knee injury. His life fell into disorder and he grew depressed.
 

 On August 7, 1996, defendant approached a stranger as she was rollerblading on a street in the Town of Orchard Park. He dragged her aside and struck her repeatedly in the head with a hard object. When observed, he fled the scene but was immediately apprehended and gave varying accounts to the police.
 

 After his indictment for assault in the second degree
 
 (see,
 
 Penal Law § 120.05 [2]), defendant served the prosecution with a notice dated September 18, 1996, stating, in its entirety:
 

 “Please take notice that pursuant to [CPL] 250.10 (2), the defendant intends to present psychiatric evidence on his behalf in the captioned matter.”
 

 The prosecution requested that defendant identify the type of psychiatric evidence he intended to present. It contended that defendant’s notice was too vague a basis upon which to
 
 *575
 
 conduct its own examination or otherwise engage the issues, considering that the notice could be interpreted to invoke either an insanity defense or some other type of psychiatric defense that might lower defendant’s level of responsibility. Defendant responded that the prosecution was entitled to nothing more than the notice as worded, and to an examination by a prosecution expert. Later, defendant furnished the prosecution with notes prepared by three of his experts.
 

 With the trial three weeks away, the prosecution wrote to the defense, again pressing for elaboration as to the nature of the defense, and the type of psychiatric evidence defendant intended to introduce. The defense refused. Four days before trial, the prosecutor yet again requested that defendant reveal the psychiatric defense, the nature of the psychiatric testimony defendant would be relying on, and the nature of the malady at the time of the alleged crime. The defense persisted in its refusal, stating that it complied fully with CPL 250.10 and that it was not obligated to supply anything further. When the issue arose during jury selection, the court ruled that it would allow defendant to interpose and present proof in support of an “insanity” affirmative defense only. The court rejected defendant’s proposal to introduce psychiatric proof of a “diminished capacity” defense, ruling that defendant had not provided proper notice that it would assert that defense. The trial proceeded accordingly and ended with a hung jury.
 

 At a scheduling conference on March 6, 1997, the court warned the defense that it did not want to encounter a CPL 250.10 notice problem again at retrial, and that defendant should identify the nature of the defense to the prosecution and the court. Defendant agreed to do so. On April 21, 1997, after prosecutorial requests for compliance, the defense wrote to the prosecution stating merely that defendant was diagnosed by Dr. Oscar Lopez as suffering from an “acute stress disorder” at the time of the alleged crime, and that Dr. Ewing would testify as to the diagnosis.
 

 On May 12, 1997, just before jury selection, defendant revealed for the first time that on retrial he intended to pursue a Penal Law § 40.15 insanity affirmative defense, and, in addition, a psychiatric defense based on his inability to form an assaultive intent. The court precluded the second defense, owing to the untimeliness of defendant’s notice. Defendant was convicted of assault in the second degree. The Appellate Division affirmed the judgment of conviction.
 

 
 *576
 

 People v Max Almonor.
 
 Defendant-appellant Max Almoner, a former New York State Parole Officer, was experiencing marital difficulties. On March 12, 1993, as his wife waited in a public area outside a courtroom in Kings County Family Court, defendant engaged her in a brief, turbulent conversation and then shot her three times in the head, killing her. He was indicted for murder and related crimes.
 

 Within a week after the shooting, defendant underwent testing by senior psychologist Dr. Nahama Broner at Kings County Hospital. In September and October of 1993, Drs. Edward Berkelhammer and Howard Epstein found defendant delusional and psychotic, as a result of which he was declared not competent to stand trial, pursuant to CPL 730.10. Approximately two years later, the court found defendant competent for trial. Defendant then served notice, pursuant to CPL 250.10, stating that he intended to present psychiatric evidence in support of an insanity affirmative defense (Penal Law § 40.15).
 
 [1]
 
 Defendant also furnished the prosecution with the report of his own expert, Dr. Stanley H. Brodsky, as well as copies of the materials on which Dr. Brodsky had relied, including the psychological test report of Dr. Broner and the CPL 730.10 report that Drs. Berkelhammer and Epstein prepared for the first competency hearing. Thus informed, the prosecution had defendant examined by its own psychiatrist, Dr. Robert H. Berger.
 

 The trial began on November 3, 1995. At the outset, the court asked both sides for the names of the experts they intended to call. The prosecution named only Dr. Berger, and defendant named only Dr. Brodsky. In accordance with those representations, the court set a schedule for the trial and told the jury that each side would call a single expert. During voir dire, defendant’s attorney also told the jury that he would call a psychiatrist as his expert witness, and in his opening statement reinforced the expectation that he would call only Dr. Brodsky for that purpose. This was further confirmed when the parties discussed Dr. Brodsky’s availability in relation to the scheduling of witnesses and plans for managing the length of the trial.
 

 At the trial, defendant called Dr. Brodsky, who testified that he diagnosed defendant as having a delusional paranoid disorder, persecutory type, and described how the events leading up
 
 *577
 
 to the shooting were indicative of defendant’s mental illness. He concluded his direct examination by stating that in his opinion defendant, at the time of the shooting, “lack[ed] substantial capacity to know and appreciate the nature and consequences of his actions or that such acts were wrong.”
 

 After Dr. Brodsky completed his direct examination, the defense stated, for the. first time, that it also wanted to call Drs. Berkelhammer and Epstein, as well as Dr. Broner, but that it would not ask these witnesses to express an opinion as to defendant’s state of mind at the time of the crime. The prosecutor objected, contending that the defense should be precluded from calling these witnesses, based on repeated defense representations as to the extent of its psychiatric expert testimony. The prosecutor also argued that any testimony by Drs. Berkelhammer and Epstein about defendant’s mental state as it existed months after the shooting was not relevant to the insanity defense. As to Dr. Broner, the prosecutor additionally argued that defendant had not produced the raw test data on which Dr. Broner relied in reaching his conclusions.
 

 The court precluded all three witnesses, ruling that the prosecution had no reason to expect that these experts would be called and that the defense did not show good cause for allowing them to be called. The court also stated that it was unwilling to disrupt the trial for the prosecution to prepare to meet unexpected evidence. Both sides rested after the jury heard Dr. Brodsky for the defendant, Dr. Berger for the prosecution, and a number of fact witnesses. Following summations and the court’s charge, the jury found the defendant guilty of manslaughter in the first degree (acting under extreme emotional disturbance) in violation of Penal Law § 125.20 (2) and assault in the first degree (Penal Law § 120.10 [1]). The Appellate Division affirmed the judgment of conviction.
 

 In the two appeals before us, each defendant claims that the trial court committed reversible error and denied him a fair trial when it precluded a portion of his psychiatric evidence. We affirm the Appellate Division order in both appeals.
 

 Legal Analysis
 

 People v Anthony Pitts.
 
 Defendant claims that the court abused its discretion by precluding the portion of his psychiatric evidence that related to lack of assaultive intent. We disagree. The Legislature enacted CPL 250.10 to promote procedural fairness and orderliness. The statute is designed to
 
 *578
 
 create a format by which psychiatric evidence may be prepared and presented manageably and efficiently, eliminating the element of surprise. With that in mind the Legislature has formulated a procedure that depends upon proper notification, adversarial examination, and preclusion when appropriate.
 

 The statute’s notification format is governed by two provisions. The threshold section, CPL 250.10 (2), provides that in order for a defendant’s psychiatric evidence to be admissible, the defense must file and serve a timely, written notice of its intent to present such evidence. Section 250.10 (2) is augmented by CPL 250.10 (1), which corresponds to the three categories of recognized psychiatric defenses. The first (CPL 250.10 [1] [a]) is to support an insanity affirmative defense as now defined in Penal Law § 40.15. The second (CPL 250.10 [1] [b]) contemplates that a defendant may present psychiatric evidence to reduce the crime of murder in the second degree to manslaughter, first degree, based on extreme emotional disturbance (Penal Law § 125.25 [1] [a]; § 125.27 [2] [a]). The third category (CPL 250.10 [1] [c]) is a catch-all provision that contemplates a defendant’s use of psychiatric evidence in connection with “any other defense.”
 
 [2]
 

 These three classifications are integral to the operation of the statute. CPL 250.10 and its notice provisions initially contemplated only an insanity defense (now an affirmative defense). Recognizing, however, that psychiatric evidence could properly be introduced for mitigatory purposes, the Legislature broadened the definition of psychiatric evidence to include the two other categories
 
 (see,
 
 L 1982, ch 558;
 
 see also, People v Cruickshank,
 
 105 AD2d 325,
 
 affd sub norm. People v Dawn Maria C.,
 
 67 NY2d 625).
 
 [3]
 
 Because Pitts had been indicted for assault, there were two possible categories of psychiatric defenses open to him, namely the CPL 250.10 (1) (a) insanity defense and the CPL 250.10 (1) (c) “any other defense.”
 

 After experiencing difficulties with the sufficiency of Pitts’s CPL 250.10 notice in this regard at the first trial, the court, in planning for the retrial, discussed this issue with both sides.
 
 *579
 
 Despite the court’s warning and ongoing prosecution requests, defendant refused to identify which category of defense he intended to rely upon, until April 21, 1997, when he merely furnished a written “notice” stating that he was diagnosed as suffering from an “acute stress disorder” at the time of the alleged crime. Not until the eve of trial, three weeks later, did Pitts reveal enough information to identify the paragraph or paragraphs under CPL 250.10 (1) on which he planned to rely. The history of the statute demonstrates the importance of its' notice and preclusion format. It was enacted to prevent what happened here.
 

 Former Code of Criminal Procedure § 336 provided that “[w]henever a person in confinement under indictment, desires to offer the plea of insanity, he may present such plea at the time of his arraignment, as a specification under the plea of not guilty.” Inasmuch as that statute did not require any advance notice of an insanity defense, this Court held that a Trial Judge “was in error in suggesting that defendant was required to file a special plea of insanity or lack of mentality as a prerequisite to the introduction of evidence of insanity or lack of mentality”
 
 (People v Joyce,
 
 233 NY 61, 70;
 
 see also, People v Draper,
 
 278 App Div 298, 301,
 
 affd
 
 303 NY 653).
 

 Because former Code of Criminal Procedure § 336 allowed a defendant to raise the insanity defense at any point in the trial, courts were obliged to entertain it and to deal with inevitable requests for adjournments by prosecutors confronted with unexpected psychiatric defenses. Granting an adjournment meant disturbing the orderly progress of the trial, and could involve the reordering of proof and witnesses, all to the disservice of the court proceedings and the trier of fact, typically the jury. On the other hand, if the court denied the adjournment the jury would not have the benefit of countervailing expert testimony. To obviate problems of this kind, the Legislature amended the former Code to provide that “[e]vidence of mental disease or excluding responsibility is not admissible upon a trial unless the defendant serves upon the district attorney and files with the court a written notice of his purpose to rely on the [insanity] defense”
 
 (see,
 
 L 1963, ch 595). The statute also required a defendant to serve the notice within 20 days after pleading not guilty, or later if the court found good cause
 
 (see,
 
 Mem of Commn on Revision of Penal Law and Crim Code, 1963 McKinney’s Session Laws of NY, at 1986).
 

 In light of this statutory background, we examine the defendant’s argument that he complied with CPL 250.10. He
 
 *580
 
 asserts, in essence, that his April 21, 1997 notice was adequate. We disagree. A notice that names a disorder untied to a CPL 250.10 (1) category is an abstraction. An insanity affirmative defense is not the same as a
 
 mens
 
 rea-type defense. The two appear in different paragraphs of CPL 250.10 (1). They rest on different psychiatric foundations and different mental states. They call for different psychiatric testimony and involve different legal theories
 
 (see generally,
 
 Penal Law § 25.00 [2]; Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 40.15, at 203). An insanity affirmative defense is defined by the precise wording of Penal Law § 40.15, which contemplates that as a result of mental disease or defect, the defendant lacks substantial capacity to know or appreciate either the nature and consequences of such conduct or that such conduct was wrong. A
 
 mens
 
 rea-type defense, by contrast, serves to negate a specific intent necessary to establish guilt
 
 (see, People v Segal,
 
 54 NY2d 58, 66).
 

 Because a CPL 250.10 (1) (a) insanity affirmative defense differs from the one described in CPL 250.10 (1) (c), defendant’s argument is further flawed. It overlooks the importance of the prosecution’s statutory entitlement to its own examination. Unless the prosecution is informed early enough of the nature of the defense with reference to the CPL 250.10 (1) categories, it cannot conduct its examination meaningfully or in time to prepare for trial. As its history illustrates, this provision is a critical part of the statutory scheme.
 

 Initially, former Code of Criminal Procedure § 336 did not afford the prosecution the right to have its own expert examine the defendant
 
 (see,
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 250.10, at 331). This Court, however, held that a defendant seeking to call a psychiatrist must cooperate and submit to a mental examination requested by the prosecution
 
 (see, Matter of Lee v County Ct.,
 
 27 NY2d 432, 441-442,
 
 cert denied
 
 404 US 823).
 

 The
 
 Lee
 
 holding was engrafted into the statutory format so that by 1980, CPL 250.10 contained the notice and preclusion concept of former Code of Criminal Procedure § 336 as well as the prosecution’s entitlement to its own expert mental examination (L 1980, ch 548). It also contained other provisions, involving the preparation of reports and the presence of defense counsel at an examination conducted by a prosecution expert, all designed to advance fairness and a constructive environment for the receipt of psychiatric evidence
 
 (see generally, People v Fratt,
 
 146 Misc 2d 77).
 

 
 *581
 
 We conclude that because defendant did not comply with CPL 250.10, the trial court acted within its discretion in precluding defendant as it did. Indeed, the statute contemplates and mandates preclusion for failure of compliance. The statute is not cast so as to allow a defense or affirmative defense to be introduced when notice is given; it is cast in terms that bar the defense
 
 unless
 
 notice is given.
 

 In
 
 People v Berk
 
 (88 NY2d 257,
 
 supra),
 
 this Court recognized the compelling nature of the notice and preclusion provisions when it interpreted CPL 250.10 to require that a defendant seeking to introduce a psychiatrist’s testimony must comply with the statute, even though the psychiatrist had not examined the defendant. Berk contended that the CPL 250.10 notice requirement applied only to psychiatric evidence obtained by means of a psychiatric examination of the defendant. He argued that he was not required to furnish notice in order to call an expert to testify generally as to the “fight or flight” syndrome and the impairment of memory following a traumatic event. This Court rejected the argument and upheld the court’s preclusion order, on the ground that the advance notice provision was designed to “ ‘prevent disadvantage to the prosecution as a result of surprise’ ”
 
 (People v Berk,
 
 88 NY2d, at 263,
 
 supra
 
 [quoting
 
 Ronson v Commissioner of Correction,
 
 463 F Supp 97, 103,
 
 affd
 
 604 F2d 176]) and that it encompassed “any mental health evidence to be offered by the defendant in connection with such a defense” (88 NY2d, at 265,
 
 supra).
 

 The governing principle is that CPL 250.10 requires that the defense furnish timely notice of the CPL 250.10 (1) category or categories on which it intends to rely. The statute also contemplates that the notice contain enough information to enable the prosecution and the court to discern the general nature of the alleged psychiatric malady and its relationship to a particular, proffered defense. Unless the prosecution is so informed, it will not be able to conduct a meaningful psychiatric examination of its own. Had Pitts complied with the court’s directive and the prosecution’s repeated requests to reveal earlier what he had withheld until the very last moment, the prosecution, the court, and the statutory objectives would have been satisfied. When defendant finally revealed that he intended to rely on the insanity affirmative defense and, in addition, on a defense involving a lack of assaultive intent,
 
 both
 
 based on acute stress disorder, he brought himself in compliance with the statute. The revelation, however, was untimely. CPL 250.10 contemplates timely disclosure so that the trier of
 
 *582
 
 fact may benefit, after psychiatric issues are sharpened and engaged to the fullest extent possible (see
 
 also,
 
 CPL 240.20 [Discovery; upon demand of defendant]). At the other extreme, and to be avoided, lies the prospect of psychiatric hide and seek.
 

 We recognize that the defense may often be unable to make an early determination as to the viability of a particular psychiatric defense and its psychiatric basis. There is nothing in the statute, however, that prohibits amendment of a notice. Indeed, in some cases it may be warranted, owing to circumstances and developments that vary from case to case. All of this is subject, of course, to the court’s determination as to good cause, timeliness, prejudice, and other appropriate considerations.
 

 In most instances both sides will be able to agree in writing, without court involvement, as to points of compliance. When there is disagreement, the parties may resort to written motion practice, but an early conference on the record has distinct, advantages. In that setting, with the opportunity for discussion and distillation, the court will be able to evaluate the parties’ positions and deal with whatever subtleties or complications arise; In the last analysis, the court will direct compliance and the exchange of information well enough before trial so that the parties may prepare adequately, in full confidence that the psychiatric issues will be appropriately addressed as noticed.
 

 People v Max Almonor.
 
 The issue before us involves the exercise of the court’s discretion at trial. When the court, prior to jury selection, asked both sides whom they intended to call as experts, defendant named only Dr. Brodsky, despite being asked twice. The prosecution prepared its case, made its jury selections, and delivered its opening statement based on that representation. The trial proceeded on that basis, with no hint that defendant would seek to alter or expand his psychiatric presentation. When midway through the trial the defense sought to call three more psychiatric witnesses, the court’s discretion was implicated.
 

 Critically, and as the Appellate Division aptly observed, defendant did not seek to call the witnesses to render an opinion as to defendant’s mental condition at the time of the crime. Moreover, the defense gave no indication as to whether and when the witnesses would be available to testify or how that would affect the management of the trial. The prosecution
 
 *583
 
 argued that this would create logistical problems and that it would be unable to engage the proffered testimony without additional preparatory time and effort. The prosecution also registered a plausible objection to Dr. Broner’s testimony because defendant had not furnished it with the raw data underlying the tests
 
 (see, People v Santana,
 
 80 NY2d 92, 99-100,
 
 rearg dismissed
 
 81 NY2d 1008).
 

 The trial court is granted broad discretion in making evidentiary rulings in connection with the preclusion or admission of testimony and such rulings should not be disturbed absent an abuse of discretion
 
 (see, People v Aska,
 
 91 NY2d 979, 981). We find no such abuse here.
 

 Accordingly, in each case the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick and Wesley concur; Judge Levine taking no part.
 

 In each case: Order affirmed.
 

 [1]
 

 . The parties inform us that the actual notice has been lost, but they agree that the prosecution did not challenge its form or timeliness.
 

 [2]
 

 . All three categories refer to evidence of “mental disease or defect,” terminology traditionally associated only with what had been the insanity defense. The term, however, should be interpreted to include mental infirmities that would not be sustained under what is now an affirmative insanity defense
 
 (see, People v Berk,
 
 88 NY2d 257, 263,
 
 cert denied
 
 519 US 859).
 

 [3]
 

 . The 1982 wording is with us today, save for a 1984 amendment reflecting that the insanity defense had become an affirmative defense (L 1984, ch 668).