WILSON, J. (dissenting).
"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations" ( Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 [1973] ). Included in that right is the "chance to present his case in his own way" by calling witnesses and by entrusting their examination to either his counsel or his own faculties ( McKaskle v. Wiggins, 465 U.S. 168, 177, 104 S.Ct. 944, 79 L.Ed.2d 122 [1984] ). The majority denies Mr. Silburn his chance in contravention of our precedents; I would reverse to grant him a new trial on that ground. I disagree with the majority's interpretation of CPL 250.10, but agree the error here *709 was harmless, and therefore would not reverse on that ground.
I.
"[T]he right to self-representation embodies one of the most cherished ideals of our culture; the right of an individual to determine his own destiny" ( People v. McIntyre, 36 N.Y.2d 10, 14, 364 N.Y.S.2d 837, 324 N.E.2d 322 [1974] ). Unless the accused has agreed to representation by counsel, "the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense ( Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 [1975] [emphasis in original] ). Of course, the Federal and New York Constitutions also guarantee that the accused will "have the Assistance of Counsel for his defence" ( U.S. Const. Amend VI ; see also N.Y. Const. art. I, § 6 ). Asserting the right to self-representation requires relinquishment of representation by competent counsel. Few defendants will possess the legal training and experience of counsel.
**794 Therefore, when a defendant makes a timely and unequivocal request to proceed pro se, we require trial courts to ascertain whether there has been a knowing and intelligent waiver of the right to counsel and whether the defendant's conduct would prevent a fair and orderly trial ( McIntyre, 36 N.Y.2d at 17, 364 N.Y.S.2d 837, 324 N.E.2d 322 ). Here, Mr. Silburn timely and unequivocally asserted his right to represent himself, but the trial court defaulted in its duty to inquire. Accordingly, I would reverse Mr. Silburn's conviction and remand the case for a new trial.
The facts are as presented in the majority opinion. Two weeks before trial, Mr. Silburn requested to proceed pro se.
''THE DEFENDANT: Your Honor, excuse me, your Honor.
''THE COURT: Yes?
''THE DEFENDANT: I would like to know if I could proceed as pro se.
''MR. CHAIKEN [DEFENSE COUNSEL]: Pro se.
''THE COURT: In other words, you want to represent yourself?
''THE DEFENDANT: Not just that represent myself, but having limitation with my counsel-
''THE COURT: No, I don't do that. You either have a lawyer, or you don't have a lawyer. I don't have legal advisors. You choose to represent yourself, you sit there by yourself. You want to have a lawyer, you have a lawyer.
''All Right?
''August 7 for conference.
''August 13 for trial.''
As that transcript makes clear, Mr. Silburn began by stating his unequivocal request to proceed pro se. He followed it with what any reader of McIntyre, "the foundation stone of our self-representation jurisprudence", and its progeny would have considered a second unequivocal expression of that desire ( People v. Crampe, 17 N.Y.3d 469, 481, 932 N.Y.S.2d 765, 957 N.E.2d 255 [2011] ); see McIntyre, 36 N.Y.2d at 12-13, 364 N.Y.S.2d 837, 324 N.E.2d 322 [treating Mr. McIntyre's request that he "try the case himself and that counsel be permitted to sit with him as an adviser" as unequivocal]; see also Crampe, 17 N.Y.3d at 477, 932 N.Y.S.2d 765, 957 N.E.2d 255 [treating Mr. Wingate's request that he proceed pro se with "an attorney to assist" as unequivocal]; People v. Providence, 2 N.Y.3d 579, 581-582, 780 N.Y.S.2d 552, 813 N.E.2d 632 [2004] [treating Mr. Providence's request that he "proceed pro se, with assigned counsel placed in a 'standby' role" as unequivocal] ). The majority offers no explanation *710 why Mr. Silburn should be treated differently from those who came before.
Nothing in Mr. Silburn's two statements-his only statements before the court summarily concluded the hearing-supports the majority's conclusion that his request to proceed pro se was conditioned on, rather than merely eventually combined with, his request for standby counsel. Consider the following illustration:
CUSTOMER: Sir, excuse me, sir.
CASHIER: Yes?
CUSTOMER: I would like to order a Big Burger.
CASHIER: In other words, you want two all-beef patties, special sauce, lettuce, cheese, pickles, onions on a sesame seed bun?
CUSTOMER: Not just that, but I would also like fries with it-
CASHIER: No, we don't do that. You either have a Big Burger, or you have fries. We don't serve combinations. You choose a Big Burger, you sit there without fries. You want fries, you have fries only.
All Right?
Next customer.
**795 Would the cashier be justified in assuming the customer no longer desired a Big Burger and delivering an order of fries only? Should the customer go hungry for using a correlative conjunction?
There are two important differences that make Mr. Silburn's situation grave, when compared to a fast-food fiasco. First, the court is tasked with determining which of two fundamental constitutional rights Mr. Silburn wishes to choose, if he must forgo one. That determination demands far more concern and precision than a simple lunch order.[1] Ironically here, although a "lack of knowledge of legal principles" and "unfamiliarity with courtroom procedures" cannot bar defendants from exercising their right to self-representation, the majority's decision uses those exact shortcomings to prevent Mr. Silburn from requesting to exercise his right ( People v. Davis, 49 N.Y.2d 114, 120, 424 N.Y.S.2d 372, 400 N.E.2d 313 [1979] ). Second, the customer and cashier are on even footing, whereas Mr. Silburn is far less versed in law than the court. (Indeed, customers can take their money to the burger joint next door; Mr. Silburn is rooted to his spot.) The majority frees courts from engaging in "any particular catechism"-at the price of imposing a precise one on defendants (majority op. at 153, 74 N.Y.S.3d at 787, 98 N.E.3d at 702, quoting People v. Rodriguez, 95 N.Y.2d 497, 502, 719 N.Y.S.2d 208, 741 N.E.2d 882 [2000] ). Yet who in that relationship has the pulpit?
Moreover, even assuming Mr. Silburn could be understood to have conditioned his request for self-representation on his request for the appointment of standby counsel, trial courts presented with those two requests should, if they deny the second, be required to ask defendants whether they prefer to reassert or recant the first. Mr. Silburn did not, as the majority would have it, "remain equivocal despite having been informed of the scope of his right" (majority op. at 153, 74 N.Y.S.3d at 787, 98 N.E.3d at 702); he remained silent. Given the court's decision to abruptly conclude the hearing after clarifying its rules, *711 we cannot interpret that silence as consent to representation by counsel. Only by asking follow-up questions that ascertain defendants' true intentions can trial courts avoid Sixth Amendment violations and foreclose the majority's concern that wily defendants will "pervert the system" by spouting ambiguities in a "deliberate plot to manipulate the court" (majority op. at 150, 152 n. 3, 74 N.Y.S.3d at 784-85, 786 n. 3, 98 N.E.3d at 699-700, 701 n. 3).
The injustice of the majority's approach is compounded by the fact that defendants reasonably expect their requests for standby counsel to be granted. It is unfair to punish a defendant for requesting what all assume-on the basis of our prior case law, their prior trials, the attestations of fellow inmates, the American Bar Association's (ABA) recommendations, or a colorable reading of the Sixth Amendment (see McIntyre, 36 N.Y.2d at 13, 364 N.Y.S.2d 837, 324 N.E.2d 322 ; Crampe, 17 N.Y.3d at 475, 932 N.Y.S.2d 765, 957 N.E.2d 255 [defendant "had previously represented himself with a lawyer's assistance"]; Erica J. Hashimoto, **796 Defending the Right of Self-Representation: An Empirical Look at the Pro Se Felony Defendant, 85 NC L Rev 423, 485 [2007] ["In the overwhelming majority of cases ... the defendant was afforded advisory counsel"]; ABA Standards for Criminal Justice: Special Functions of the Trial Court Judge standards 6-3.6-6-3.7 [3d ed 2000]; People v. Mirenda, 57 N.Y.2d 261, 267-269, 455 N.Y.S.2d 752, 442 N.E.2d 49 [1982, Meyer, J., dissenting] )-will be provided in the first place. "To allow the uninformed to unwittingly waive their right of self-representation merely by requesting standby counsel 'is to imprison a man in his privileges and call it the Constitution' " ( People v. Dennany, 445 Mich. 412, 456, 519 N.W.2d 128, 147 [1994, Cavanaugh, Ch.J., concurring in part and dissenting in part], quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 [1942] ; see also Faretta, 422 U.S. at 822-823, 95 S.Ct. 2525 ["There is something specially repugnant to justice in using rules of practice in such a manner as to debar a prisoner from defending himself, especially when the professed object of the rules so used is to provide for his defence" (citation and internal quotation marks omitted) ] ). Here, although the trial court was not required to satisfy Mr. Silburn's request for standby counsel ( Mirenda, 57 N.Y.2d at 265, 455 N.Y.S.2d 752, 442 N.E.2d 49 ), it erred in immediately curtailing any further conversation and thereby preventing the determination of whether Mr. Silburn wished to proceed pro se without any assistance of counsel.
The majority does not engage with Mr. Silburn's first request to proceed pro se. Instead, it rests its analysis on his second request, made two weeks after the first (majority op. at 151, 74 N.Y.S.3d at 785-86, 98 N.E.3d at 700-01). Neither the majority nor the People contend that the court's failure to conduct a McIntyre inquiry upon Mr. Silburn's initial request was cured by his subsequent request. Nor could they plausibly argue that the second colloquy-which was, like the first, summarily curtailed by the court's abruptly adjourning proceedings for the day-supports the proposition that Mr. Silburn's initial request was conditioned on his receiving standby counsel. In that second colloquy, the court attempted to describe Mr. Silburn's earlier position, saying "[Y]ou said you didn't want to represent yourself." Mr. Silburn immediately denied it: "I never said that." The transcript plainly shows that Mr. Silburn, not the court, was correct.
In any event, Supreme Court also erred in refusing to contemplate even the possibility of assigning standby counsel.
*712 Whether to permit standby counsel is "a subject for the discretion of the Trial Judge" ( Mirenda at 266, 455 N.Y.S.2d 752, 442 N.E.2d 49 ; see majority op. at 151, 74 N.Y.S.3d at 785-86, 98 N.E.3d at 700-01). The U.S. Supreme Court has explained that "[t]he term 'discretion' implies the absence of a hard-and-fast rule. The establishment of a clearly defined rule of action would be the end of discretion" ( The Styria, Scopinich v. Morgan, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027 [1902] [emphasis omitted] ). "When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances" ( Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 [1931] ). Our own precedents are equally clear that exercises of discretion must be rooted in "fact or circumstance" ( In re Superintendent of Banks of State of New York, 207 N.Y. 11, 15, 100 N.E. 428 [1912] ). We will intervene "where the trial court has either abused its discretion or exercised none at all" ( People v. Smith, 27 N.Y.3d 652, 663, 36 N.Y.S.3d 861, 57 N.E.3d 53 [2016] [brackets omitted]; see also People v. Williams, 56 N.Y.2d 236, 240, 451 N.Y.S.2d 690, 436 N.E.2d 1292 [1982] ["(T)his is an exercise of discretion **797 that should be left to the trial court. But it is also an exercise of discretion that should be performed by the trial court"] ). Our trial courts understand that discretion "has long been recognized as requiring an actual exercise of judgment upon the part of the court ... [that] necessitates a consideration by the court of the facts and circumstances which are necessary to make a sound, fair and just determination. The court is not permitted to arbitrarily establish a fixed policy to govern every case, as that is the exact antithesis of discretion" ( Application of Frazzita, 147 N.Y.S.2d 11, 16-17 [Sup. Ct., Jefferson County 1955] )
That antithesis-not the abuse of discretion, but its absence-was on display here. Supreme Court did not consider any facts or circumstances in denying Mr. Silburn's request for standby counsel. Instead, it relied on a blanket policy against them-and later reiterated that policy, describing standby counsel as something "I don't allow."
Although we have determined that defendants choosing to proceed pro se have no constitutional right to standby counsel, that conclusion does not mean the decision should be left to the personal preferences of each trial judge, without consideration of the defendant's abilities, the nature, length and complexity of the case, or other factors bearing on the value of standby counsel. Pro se defendants may have no constitutional right to standby counsel, but that proposition does not mean that the availability of standby counsel should turn on the vicissitudes of which judge they happen to draw, whose discretionary decision will be unreviewable. Uniformity could be provided by statute or court rule.
II.
As I explain below, the majority has misinterpreted CPL 250.10. I would not reverse on that basis, however, because I agree with the majority that the error here was harmless beyond a reasonable doubt (majority op. at 161 n. 11, 74 N.Y.S.3d at 793 n. 11, 98 N.E.3d at 708 n. 11).
A.
The majority interprets CPL 250.10(1)(c) as defining psychiatric evidence to include testimony offered not only to negate an element of the crime, but also to attack the weight to be given evidence offered by the People. That newly expansive *713 interpretation of a statute impinging somewhat on defendants' "constitutional right to present witnesses" in their own defense ignores the plain meaning of the provision as well as its legislative history and statutory context ( People v. Berk, 88 N.Y.2d 257, 266, 644 N.Y.S.2d 658, 667 N.E.2d 308 [1996] ). Accordingly, I would hold that Mr. Silburn did not have to provide notice of his intention to introduce psychiatric evidence offered to persuade the jury to discount the evidentiary weight to be given to his statements to the police.
CPL 250.10 requires a defendant who intends to proffer psychiatric evidence at trial to provide notice of that intention within 30 days of pleading not guilty, and allows the People when served with such notice to apply for an order requiring the defendant to submit to an examination by the People's psychiatrist or licensed psychologist ( CPL 250.10[2] ; [3] ). It defines "psychiatric evidence" as:
"(a) Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of lack of criminal responsibility by reason of mental disease or defect.
"(b) Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of extreme emotional disturbance as defined in paragraph (a) of subdivision one of section 125.25 of the penal law and paragraph (a) of subdivision two of section 125.27 of the penal law.
**798 "(c) Evidence of mental disease or defect to be offered by the defendant in connection with any other defense not specified in the preceding paragraphs." ( CPL 250.10[1] ).
The question is whether to read CPL 250.10(1)(c) in the light of its fellow paragraphs or as an unheralded restriction on defendants' ability to present their case.
The majority and I agree that in approaching that question "our primary consideration is to discern and give effect to the Legislature's intention" and that "[e]vidence of legislative intent is 'first sought in the words the Legislature has used' " (majority op. at 155, 74 N.Y.S.3d at 788, 98 N.E.3d at 704 [citations and internal quotation marks omitted] ). The statutory text is the "best evidence" and "clearest indicator" of legislative intent ( Kimmel v. State of New York, 29 N.Y.3d 386, 392, 57 N.Y.S.3d 678, 80 N.E.3d 370 [2017] [internal quotation marks omitted]; Mestecky v. City of New York, 30 N.Y.3d 239, 243, 66 N.Y.S.3d 207, 88 N.E.3d 365 [2017] ). To resolve questions of statutory interpretation, we therefore "rely first and foremost on the plain language of the statute and canons of statutory interpretation" ( Avella v. City of New York, 29 N.Y.3d 425, 441, 58 N.Y.S.3d 236, 80 N.E.3d 982 [2017 DiFiore, Ch.J., dissenting] ). Included among those canons is the proposition that "[w]hen the statutory language at issue is but one component in a larger statutory scheme, it must be analyzed in context and in a manner that harmonizes the related provisions and renders them compatible" ( Mestecky, 30 N.Y.3d at 243, 66 N.Y.S.3d 207, 88 N.E.3d 365 [internal quotation marks omitted]; see McKinney's Cons Laws of NY, Book 1, Statutes § 97). Similarly, "[w]e have recognized that meaning and effect should be given to every word of a statute and that an interpretation that renders words or clauses superfluous should be rejected" (Mestecky at 243 [internal quotation marks omitted]; see Statutes § 98 [a] ). ''[C]ourts should construe unambiguous language to give effect to its plain meaning" ( (Mestecky at 243, 66 N.Y.S.3d 207 ).
Here, the plain language of CPL 250.10(1) is susceptible to only one interpretation: "psychiatric evidence" includes only evidence of mental disease or defect *714 offered in connection to an affirmative defense or an element of the crime charged. First, the "familiar principles of ejusdem generis"-invoked with particular force in this case by the reference in the term at issue to the "other" defenses "specified in the preceding paragraphs"-require we limit the general language of paragraph (c) by the specific phrases of paragraphs (a) and (b) ( People v. Illardo, 48 N.Y.2d 408, 416, 423 N.Y.S.2d 470, 399 N.E.2d 59 [1979] [internal quotation marks omitted]; see Statutes § 239[b] ). Those paragraphs enumerate certain statutory defenses that would, if established, completely exonerate the accused or mitigate the crimes charged-which is what a "defense" does. Read with its companions, paragraph (c) can only be meant to include evidence that would either raise a defense by creating reasonable doubt about the mens rea element of the crime or establish an affirmative defense (see Penal Law § 25.00 ; see e.g. People v. Rivers, 281 A.D.2d 348, 723 N.Y.S.2d 14 [1st Dept. 2001] [notice required when defendant argued his use of a medication prescribed for liver trouble rendered him unaware of what he was doing at the time of the crime]; People v. Oakes, 168 A.D.2d 893, 565 N.Y.S.2d 648 [4th Dept. 1990] [notice required when defendant argued his low IQ and susceptibility to being led by authority figures prevented him from knowingly and willingly giving false testimony] ).[2] **799 Second, the majority's expansive interpretation of paragraph (c) would impermissibly reduce paragraphs (a) and (b) to mere surplasage. There would be no reason to specify certain defenses in those paragraphs if (c) is meant, as the majority suggests, to apply to all psychiatric evidence whatsoever. In fact, there would be no reason to retain any of the 92 words of CPL 250.10(1) that follow "[a]s used in this section, the term 'psychiatric evidence' means: (a) Evidence of mental disease or defect to be offered by the defendant". What, in the majority's view, are we to make of the remaining 81% of the subdivision? Only the more limited interpretation propounded by Mr. Silburn gives meaning to paragraphs (a) and (b) while allowing them to inform the meaning of paragraph (c).
It is unsurprising, then, that prior decisions of this Court have understood CPL 250.10(1)(c) in the same, limited terms. In People v. Almonor, which comprehensively dissected the statute's three classifications, we defined the defense described in CPL 250.10(1)(c) as "a mens rea -type defense"
*715 that "serves to negate a specific intent necessary to establish guilt" ( 93 N.Y.2d 571, 580, 693 N.Y.S.2d 861, 715 N.E.2d 1054 [1999] ). Similarly, in People v. Gonzalez, we summarized all three paragraphs of CPL 250.10(1) as operating "in connection with the defenses of lack of criminal responsibility" ( 22 N.Y.3d 539, 545, 983 N.Y.S.2d 208, 5 N.E.3d 1269 [2014] ). Yes, those statements are dicta. But they are suggestive of how "the statutory language is generally construed according to its natural and most obvious sense"-and thus further evidence of how effect should be given to it here (Statutes § 94).[3] The unambiguous meaning of CPL 250.10 allows no other result.
Were we to look beyond the unambiguous language for evidence of the legislature's **800 intent, the legislative history and statutory context of the provision fully support the above interpretation. That history begins with the 1963 amendments to former Code of Criminal Procedure § 336. Those amendments were adopted to solve two specific problems that arose when a defendant surprised the People and the court by raising an insanity defense once a jury was impaneled: first, the inevitable adjournments that "disturb[ed] the orderly progress of the trial, and could involve the reordering of proof and witnesses, all to the disservice of the court proceedings and the trier of fact" ( Almonor, 93 N.Y.2d at 579, 693 N.Y.S.2d 861, 715 N.E.2d 1054 ); second, the prospect that even those adjournments might provide the People "insufficient opportunity to obtain the psychiatric and other evidence necessary ... to establish, as they must, the defendant's sanity beyond a reasonable doubt" ( People v. Berk, 88 N.Y.2d 257, 264, 644 N.Y.S.2d 658, 667 N.E.2d 308 [1996], quoting Mem of Commn on Rev of Penal Law and Crim Code following L 1963, ch 595, reprinted in 1963 McKinney's Session Laws of NY at 1986). The Code's new notice provision "avoid[ed] delay" and "enable[d] the People to have defendant examined by their own experts within close temporal proximity to the offense" ( id. at 265, 644 N.Y.S.2d 658, 667 N.E.2d 308 ). It came into being not to provide the People a preview of defendant's arguments, or to eliminate all surprise for its own sake-many things at trial are surprising-but to make it possible for them, within the limits imposed by the right to present a defense (see Letter from Thomas F. McCoy, St Administrator of Jud Conf, Apr. 15, 1963, Bill Jacket, L 1963, ch 595 at 6),to do their job without unfair surprise-that is, to make it possible for them in insanity defense cases, which turn on psychiatric evidence, to establish what they must.
The extension of the statute from insanity to other psychiatric defenses followed a similar rationale. In 1981, we applied the logic of Code of Criminal Procedure § 336, by then operating under its present designation in the CPL, to a defendant's effort to introduce psychiatric evidence showing he suffered a memory impairment and *716 thus lacked the intent to provide false testimony that was an essential element of the People's perjury charge ( People v. Segal, 54 N.Y.2d 58, 444 N.Y.S.2d 588, 429 N.E.2d 107 [1981] ). The "basic point" of the notice provision has always been the need to make it possible for the People to fulfill their obligation, which is "fundamentally" to "prove every element of the crime, including intent whenever relevant" ( id. at 66, 444 N.Y.S.2d 588, 429 N.E.2d 107 ). Without notice of psychiatric evidence that might undermine proof of an element of the crime, it would be simply impossible-rather than merely more difficult-for the People to carry that burden. Thus, "[a]lthough proof of a mental defect other than insanity may not have acquired the status of a statutory defense, and will not constitute a 'complete' defense in the sense that it would relieve the defendant of responsibility for all his acts[,] it may in a particular case negate a specific intent necessary to establish guilt" ( id. [citations omitted] ). In such a case, Segal held, notice was required. The following year, the legislature codified that holding by adding paragraphs (b) and (c)-thereby writing Segal 's narrow interpretation of what constitutes a defense for 250.10(1)(c) purposes into the law as it stands today (majority op. at 156, 74 N.Y.S.3d at 789, 98 N.E.3d at 704-05; William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 250.10 at 361 [2014 ed] ). That we have since furthered the narrow purpose of the statute by broadly defining who is capable of offering psychiatric evidence is not license to interpret the purpose itself more broadly than the legislature intended ( **801 Berk, 88 N.Y.2d 257, 644 N.Y.S.2d 658, 667 N.E.2d 308 ; People v. Diaz, 15 N.Y.3d 40, 904 N.Y.S.2d 343, 930 N.E.2d 264 [2010] ; but see Gonzalez, 22 N.Y.3d 539, 983 N.Y.S.2d 208, 5 N.E.3d 1269 ).
The statutory context of CPL 250.10(1) cleanly illustrates the legislature's intent to have paragraph (c) operate only in the limited cases suggested by its plain language and legislative history. CPL 250.10(2) brings the machinery of the section to life only when a defendant intends to proffer psychiatric evidence "upon a trial"; notice is not required before offering identical evidence at a pretrial hearing. Had Mr. Silburn proffered Dr. Elie's notes to contest the validity of his Miranda waiver at his suppression hearing-21 months into a 24-month pretrial detention period-but not planned to introduce them at trial, he would not have been required to provide notice at all. The majority has not provided an explanation of why evidence that could have been presented, without notice, at a hearing presents such a threat to the principle of fundamental fairness when adduced at trial. Instead, the majority argues that as a practical matter, "timely notice ... would provide the People ample opportunity to obtain rebuttal evidence before the pretrial suppression hearing" (majority op. at 159 n. 10, 74 N.Y.S.3d at 792 n. 10, 98 N.E.3d at 707 n. 10). That rejoinder misses the very point of my argument: very different types of psychiatric-evidence-based arguments are presented at suppression hearings and at trial. That focus on the trial itself strongly suggests the legislature intended to require notice of psychiatric evidence that proved the defenses typically raised at trial, and did not intend to bring into CPL 250.10's ambit psychiatric evidence that addressed the evidentiary issues, not generally fatal to the People's case, typically raised at pretrial hearings.[4]
*717 "This result does not offend the important policy considerations underlying the notice requirement" ( Gonzalez, 22 N.Y.3d at 548, 983 N.Y.S.2d 208, 5 N.E.3d 1269 ). In disagreeing with the majority's interpretation, I do not dispute that 250.10 furthers a "compelling" purpose, as it must to withstand the close scrutiny that attends any restriction on defendants' right to call witnesses on their behalf ( Almonor, 93 N.Y.2d at 581, 693 N.Y.S.2d 861, 715 N.E.2d 1054 ; Ronson v. Commissioner of Correction, 604 F.2d 176 [2d Cir.1979] ). When defendant seeks only to challenge evidence through which the People can **802 prove their case, however, rather than a required element of the offense or an affirmative defense, the concern for preventing unfair surprise is reduced. We, no less than the trial courts, "must be vigilant in weighing a defendant's constitutional rights against the resultant prejudice to the People from the belated notice" ( People v. Diaz, 15 N.Y.3d 40, 47, 904 N.Y.S.2d 343, 930 N.E.2d 264 [2010] [internal quotation marks omitted] ). Here, that vigilance requires us to enforce the balance set by the legislature rather than bolster the People's position in ways that the legislature never intended. Adjusting that balance is not a task for this Court (see Chem Specialties Mfrs. Ass'n v. Jorling, 85 N.Y.2d 382, 394, 626 N.Y.S.2d 1, 649 N.E.2d 1145 [1995] ["(A) court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact."] ).
Here, the very fact that the error is harmless reinforces the difference between a "defense"-at which the statute is directed-and the weight or admissibility of evidence at trial, at which the statute is not directed. That is, even if the jury completely credited the psychiatric testimony, treated Mr. Silburn's Miranda waiver as ineffective, and utterly disregarded his subsequent inculpatory statements, no reasonable jury could have acquitted him. The psychiatric evidence, therefore, was unrelated to any "other defense", and is not subject to CPL 250.10.
B.
Trial courts have the discretion to permit belated notice of an intent to proffer psychiatric evidence at any time "in the interest of justice and for good cause shown" ( CPL 250.10[2] ). The majority rejects Mr. Silburn's claim that, assuming notice was required, the trial court abused that discretion in refusing to permit late notice. In so doing, it propagates the trial court's confusion over which party had custody *718 of the records in question. The evidence the defendant sought to introduce was not a privileged medical record but a "police form" (majority op. at 161, 74 N.Y.S.3d at 793, 98 N.E.3d at 708). It was generated under the auspices of, and retained by, law enforcement officials. As such, it could have been admitted and the suppression issue argued without causing much more unfair surprise to the People than the unnoticed extreme emotional disturbance defense advanced on the People's proof that we approved in Gonzalez, 22 N.Y.3d at 548, 983 N.Y.S.2d 208, 5 N.E.3d 1269 ). Where the People should not have been surprised by the evidence, the relevance of Mr. Silburn's mental health to the voluntariness of his confession was not plain until the interrogating officer testified at trial, and Mr. Silburn relied in good faith on what I believe to have been the correct, and on what was certainly a colorable, interpretation of CPL 250.10 in declining to provide notice, it was error for the trial court to refuse late notice under the statute. However, because I agree that the court was justified in precluding the evidence for its lack of probative value, and because the error would have been harmless, I concur in the result reached by the majority on this aspect of the CPL 250.10 question as well.
Accordingly, I would reverse Mr. Silburn's conviction and remand the case for a new trial before which his motion to proceed pro se, if renewed, could receive the requisite attention from the court.

The majority's complaint that my illustration trivializes Mr. Silburn's constitutional rights underscores their error: a cashier would not treat a customer's request for a burger and fries this way; should a court treat Mr. Silburn's request for his constitutional rights with less or greater regard (majority op. at 152 n. 2, 74 N.Y.S.3d at 786 n. 2, 98 N.E.3d at 701 n. 2)? To "trivialize" something is to ascribe little worth or importance to it; who here has done so?

The flaws in the majority's definition can be illustrated by the following hypothetical: Imagine the police witnessed a defendant assault a fellow bar patron. That defendant tells her friends not to worry-she has a great defense-she intends to argue a video of the events in question should be suppressed as the fruit of an illegal search. Those friends would rightly object that that is no defense at all, and that the defendant should instead establish, e.g., an alibi, her infancy, or that she acted in self-defense.
The majority hypothesizes that in some cases a defendant's confession is the sole or overwhelming evidence of guilt (majority op. at 154, 74 N.Y.S.3d at 787-88, 98 N.E.3d at 702-03). Even so, the nature of the prosecution's proof does not convert a question of admissibility into a defense. Moreover, the majority rests its hypothetical on a trial in which "[t]he People's case, in addition to the inculpatory statements, included two eyewitnesses to the crime" and the People admitted they "were uncertain as to whether they were going to introduce defendant's statements" (People v. Miller, 28 N.Y.3d 355, 357, 68 N.E.3d 61 [2016] ). The inapposite citation suggests the hypothesized case is infrequent. Even were such cases common, I would nevertheless rest easy if the worst consequence of preferring the people's statutory pronouncements to the People's ease is that a prosecutor may someday have difficulty convincing a jury to convict primarily on the confession of defendants too mentally impaired to have waived their Miranda rights.

Last year's Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York (Jan. 2017) is similarly suggestive. Its discussion of CPL 250.10 recommends amending paragraph (1)(c) to refer to "any other defense or claim "-a step that would be unnecessary if the many luminaries on that committee shared the majority's expansive interpretation of the current statute (Report at 71). Additionally, that report's conclusion that the statute applies only to evidence of the defendant's mental disease or defect, and not to evidence of a third party's-even though such evidence might be relevant to, e.g., a justification defense-undermines the majority's claim that the statute was intended to eliminate all surprise (id. ; see also CPL 250.10[3] [allowing the People to apply for an order requiring the "defendant submit to an examination"] ).

The difference is plainly rooted in type rather than timing. The legislature's intent in passing CPL 250.10 was to prevent two unfortunate consequences of introducing psychiatric evidence without prior notice: delaying the proceedings and delaying the prosecution's opportunity to obtain countervailing evidence that might be lost forever to the vagaries of mental health conditions if the People's psychiatrist did not examine the defendant shortly after the offense. The first consequence is of less concern in a suppression hearing, which is less likely to be compromised by a brief adjournment than is a jury trial already underway. The second consequence, however, is fully present; the suppression hearing will take place months or years after the contested statements. The opportunity to obtain reliable countervailing psychiatric evidence-the "primary aim of the pretrial notice requirement" (Berk, 88 N.Y.2d at 264, 644 N.Y.S.2d 658, 667 N.E.2d 308 )-will be lost without notice, and yet notice is not required, even though the potential impact on the People's case-outright exclusion, rather than the possibility of a jury discounting evidence it has already been presented-is much greater. CPL 710.60(3) does not, despite the majority's effort to equate it to CPL 250.10, require before suppression hearings anything like the early notice required before introducing psychiatric evidence at trial. Instead, it allows the court to "summarily deny the [suppression] motion if ... [t]he motion papers do not allege a ground constituting legal basis for the motion". (CPL 710.60 [3 ][a] ).